******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. This is a hard case. The majority and dissenting opinions both make valid points and reflect reasonable perspectives on the law governing loss of consortium. At the end of the day, I agree with and join the majority opinion. I write separately to underscore that we have not been requested to determine whether Connecticut law recognizes a cause of action other than loss of consortium to compensate parents for their emotional distress resulting from serious and life-changing injuries sustained by their minor child as a result of the tortious conduct of another.

The question of tort compensation naturally arises because, first, the allegations of tortious conduct by the defendants are presumed to be true at the pleading stage, and, second, the parents' emotional harm is so palpable under these circumstances. With respect to the nature and degree of harm, I agree with the majority that the emotional pain experienced by parents whose child sustains a serious, life-changing injury ordinarily will be "unimaginably devastating." It seems indisputable that the parents' anguish will be enormous, long-lasting, and distinctive. The anguish comes not only from the pain of seeing one's child suffer, but also from the parents' knowledge that the serious nature of the injuries has changed their child's life forever, and will require their child to face an unending series of challenges and struggles that were inconceivable prior to the accident. This distress is as real and severe as any noneconomic harm that the law of torts deems compensable. It is also a harm to parents that would be readily foreseeable to defendants when they manufacture or sell a product designed for use by children. Nonetheless, I also agree with the majority that this particular type of emotional distress is not within the scope of damages recoverable for "relational loss or loss of society" traditionally compensated in connection with a claim for loss of consortium.

In my view, it remains an open question whether parents may obtain compensation for their emotional distress based on a different legal theory, such as bystander emotional distress or negligent infliction of emotional distress, resulting from serious injuries to their minor child.